UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- x

MY'ASHA ROUNDTREE,

Plaintiff,

-against-

THE CITY OF NEW YORK; CONCOURSE HOUSE
DEVELOPMENT FUND COMPANY, INC.
("CONCOURSE HOUSE"); NEW YORK CITY POLICE
DEPARTMENT ("NYPD") OFFICER ANDY URENA,
SHIELD NO. 7427; NYPD LIEUTENANT MICHAEL
DUNN; NYPD OFFICERS JOHN AND JANE DOE NOS.
2-4; and CONCOURSE HOUSE SECURITY AGENT
EMILY VEGA,

Defendants.
------------------------------------------------------------------------- X

**FIRST AMENDED
COMPLAINT**

JURY TRIAL DEMANDED

1:21-cv-10576 (AJN) (SDA)

Plaintiff MY'ASHA ROUNDTREE, by her attorneys, The Bronx Defenders, Cohen &

Green, PLLC, Gideon Orion Oliver, and TakeRoot Justice as and for her Verified Complaint

herein, alleges as follows:

## PRELIMINARY STATEMENT

1. On the early morning of May 26, 2020, Plaintiff My'asha Roundtree ("Ms.

Roundtree") was sound asleep when Defendant Concourse House Security Agent Emily Vega

("Defendant Vega") allowed Defendant NYPD Officer Andy Urena, Shield No. 7427

("Defendant Urena"), Defendant NYPD Lieutenant Michael Dunn ("Defendant Dunn"), and

possibly Defendants NYPD Officers John and Jane Doe 2-4 to enter Ms. Roundtree's private

apartment within Concourse House – a shelter facility under the purview of the New York City

Department of Homeless Services ("DHS") – without presenting a warrant, trapping and falsely

imprisoning her.

2. Ms. Roundtree seeks to recover money damages arising out of Defendants'

violations of her rights under the common law and the laws of the State of New York and under

the Fourth and Fourteenth Amendments to the United States Constitution, as secured by the Civil

Rights Act, 42 U.S.C. § 1983, as well as attorney's fees and costs under New York common law

and 42 U.S.C. § 1988.

3.      Ms. Roundtree further seeks declaratory and injunctive relief against

Defendants City of New York, Concourse House, and Concourse House Security Agent Emily

Vega, related to Defendants' violations of Ms. Roundtree's rights and failures to comply with DHS

policy concerning DHS client privacy and law enforcement officer access to private residences

within DHS shelter facilities without a warrant.

## JURISDICTION AND VENUE

4.      Ms. Roundtree brings this action pursuant to the Constitution and common

laws of the State of New York as well as pursuant to 42 U.S.C. § 1983 for violations of Plaintiff's

rights under the Fourth and Fourteenth Amendments to the Constitution of the United States.

5.      Petitioner initially commenced this proceeding on August 23, 2021 in Bronx

County Supreme Court as the causes of action all arose within Bronx County.

6.      On December 10 2021, Defendant Concourse House Development Fund

Company, Inc. ("Concourse House") removed the proceeding to the Southern District of New

York pursuant to 28 U.S.C. § 1441 because the Court has original jurisdiction over Ms.

Roundtree's 42 U.S.C. §§ 1983 and 1988 claims pursuant to 28 U.S.C. § 1331.

## GENERAL MUNICIPAL LAW COMPLIANCE

7.      Ms. Roundtree timely served a Notice of Claim on the City of New York on

August 21, 2020, with respect to claims arising under New York Law on May 26, 2020.

8.      Ms. Roundtree sat for a hearing pursuant to General Municipal Law 50-h on

April 8, 2021.

9.     More than 30 days have elapsed since the Notice of Claim was served and Defendant City has neglected and/or refused to make adjustment, settlement, or payment with respect to the injuries complained of.

## JURY TRIAL DEMAND

10.     Ms. Roundtree demands a jury trial on each of Ms. Roundtree's claims for which a jury trial is allowed.

## PARTIES

11.     Plaintiff MY'ASHA ROUNDTREE currently resides in the State of New York, County of New York.

12.     Defendant, CITY OF NEW YORK (the "City") is a municipal entity created and authorized under the laws of the State of New York.

13.     Defendant City is authorized by law to maintain a police department, and does maintain the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement, and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

14.     Defendant City is authorized by law to maintain the New York City Department of Homeless Services ("DHS"), which was established by the City Charter § 610 and is responsible for providing shelter to unhoused individuals within New York City. Defendant City assumes the risks incidental to the maintenance of DHS and employment of DHS workers.

15.     Defendant CONCOURSE HOUSE DEVELOPMENT FUND COMPANY, INC. ("CONCOURSE HOUSE") is a housing shelter located at 2751 Grand Concourse, Bronx, NY 10469, serving women and families under the purview of Defendant City and DHS.

16.     Defendant NYPD OFFICER ANDY URENA, SHIELD No. 2346 ("Defendant Urena"), is and was at all times relevant herein, an officer, employee, and agent of the New York City Police Department.

17.     Defendant NYPD LIEUTENANT MICHAEL DUNN ("Defendant Dunn"), is and was at all relevant times herein, an officer, employee, and agent of the New York City Police Department. Pursuant to the Court's January 14, 2022 Order (ECF #No. 26), counsel for Respondent City identified Defendant Dunn as the NYPD member accompanying Defendant Urena on the date and at the time of the incident.

18.     Defendants NYPD OFFICERS JOHN/JANE DOE 2-4 ("Defendants John/Jane Doe"), are and were at all relevant times officers, employees, and agents of the New York City Police Department.

19.     Defendant CONCOURSE HOUSE SECURITY AGENT EMILY VEGA ("Defendant Vega"), was at all relevant times an employee of Concourse House working as a security guard at CONCOURSE HOUSE on May 26, 2020. Counsel for Defendant Concourse House identified Defendant Vega as the Concourse House Security Agent on duty on the date and at the time of the incident complained of.

20.     Defendants Urena, Dunn, Vega, and John/Jane Does 2-4 (collectively, the "Individual Defendants") are being sued in their individual and official capacities.

21.     At all times relevant herein, Defendants Urena, Dunn, and John/Jane Doe 2-4 were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages, and/or practices of the City of New York.

22.   All of the acts and omissions of the Individual Defendants alleged herein occurred while said Defendants were acting within the scope of their employment by the Defendant City.

23.   At all times relevant herein, the Individual Defendants were duly appointed and acting officers, servants, employees, and agents of Defendant City who were acting for, and on behalf of, and with the power and authority vested in them by Defendant City, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.

24.   At all times relevant herein, the Individual Defendants performed the various actions described herein and lending their physical presence and support and the authority of their officers to one another.

25.   At all times relevant herein, as set forth more fully below, Defendants' actions and/or failures to act were malicious, intentional, knowing, and/or with a deliberate indifference to or a reckless regard for the natural and probable consequences of their acts and/or omissions.

26.   The Individual Defendants are each entitled to indemnification by the City of New York under New York law for any liability arising from their conduct described herein.

## STATEMENT OF FACTS

27.   At approximately 5:00 a.m. on May 26, 2020, Defendant Urena and Defendant Dunn, who may have been accompanied by Defendants John/Jane Doe 2-4 (collectively, the "NYPD Members"), arrived at Concourse House, located at 2751 Grand Concourse in the Bronx.

28.   Concourse House is a shelter that is overseen by DHS where Ms. Roundtree resided in a private apartment on May 26, 2020.

29.    The NYPD Members approached Defendant Vega and asked to enter the shelter to arrest Plaintiff, My'asha Roundtree.

30.    The NYPD Members did not present a warrant to Defendant Vega.

31.    Upon information and belief, Defendant Vega did not ask for a warrant from the NYPD Members, nor take any other steps to determine whether the NYPD Members had a warrant.

32.    For example, upon information and belief, Defendant Vega did not contact the Department of Social Services ("DSS") Department of Legal Affairs or the Program Administrator as required by written DHS policy when NYPD members wish to execute a warrant in a DHS shelter such as Concourse House.

33.    Upon information and belief, Defendant Vega also did not take any other steps to determine if the NYPD Members had a warrant.

34.    Defendant Vega escorted the NYPD Members inside the DHS residence and past the security desk.

35.    Defendant Vega then escorted the NYPD Members up to the fourth floor of the building.

36.    The fourth floor of the building had many different apartments – some of the apartments were private, but shared between multiple residents, and others were private for only one resident.

37.    Once on the fourth floor of the building, Defendant Vega then escorted the NYPD Members to Ms. Roundtree's private apartment within Concourse House.

38.    Ms. Roundtree's apartment was separated from the rest of the apartments by a door with a lock to which only Ms. Roundtree and Concourse House Staff had a key.

39.     Within Ms. Roundtree's private apartment there was one common area that constituted her living, kitchen, and dining room area. There was another door within the apartment for Ms. Roundtree's private bedroom as well as a door for Ms. Roundtree's private bathroom. Inside Ms. Roundtree's bedroom, there were two twin-sized beds – one for her, and one for her son.

40.     The door of Ms. Roundtree's apartment locked automatically when closed, and Ms. Roundtree confirmed it was locked the night of May 25 going into the morning of May 26, 2020.

41.     Without knocking on the apartment door, Defendant Vega unlocked the door to Ms. Roundtree's apartment and entered with the NYPD Members.

42.     At no point did Ms. Roundtree consent to Defendant Vega or the NYPD Members entering her apartment.

43.     At no point did Defendant Vega seek or obtain Ms. Roundtree's consent to the NYPD Members to enter her apartment.

44.     While inside Ms. Roundtree's apartment, the NYPD Members began banging on Ms. Roundtree's bedroom door, shouting for her to come out, and claiming that they had a warrant.

45.     The NYPD Members did not have a warrant, nor had they ever applied to any court for a warrant.

46.     With Defendant Vega's permission, the NYPD Members waited inside Ms. Roundtree's apartment, just outside of her bedroom door, for approximately 30 minutes.

47.     Defendant Vega and the NYPD Members' presence prevented Ms. Roundtree from leaving her bedroom, effectively trapping her. This meant she could not use the bathroom or get food or water from her kitchen.

48.     DHS Policy No. 00-210, which was in effect on May 26, 2020, required that when officers are attempting to effectuate an arrest without a written warrant, and there are no exigent circumstances, the following procedure should be followed: "Staff should inform the officers that they cannot consent to the officer's request for access without a warrant. Staff should inform the client that the police are present for an arrest. If the client agrees to see the police, staff should escort the client to the location where the police are waiting. If the client refuses, staff should inform the police of the situation and refuse access to the police."

49.     DHS Policy No. 00-210 further stated: "Staff must note in the facility and security log books that the request for access was denied because no warrant was provided and also must notify the Program Administrator regarding the incident no later than the next business day."

50.     Additionally, a 2018 letter from DHS Administrator Joslyn Carter to "All DHS Staff (programs and security)" stated that "the NYPD May not enter any DHS facilities, including those operated by DHS providers/venders, without a warrant signed by a judge." According to this DHS communication, even where a signed warrant is provided "staff should notify the appropriate Program Administrator and the DSS Office of Legal Affairs."

51.     The procedures followed and practices employed by Defendant Vega when the NYPD Members arrived at Concourse House violated Plaintiffs' constitutional and common law rights, as well as DHS written policy and law. Specifically, they violated Policy No. 00-210,

the policy set forth in the 2018 letter from DHS Administrator Joslyn Carter concerning warrants and confidentiality, and the federal, state, and local laws on which such policies are based.

52.    The above DHS written policies make clear that there are only three circumstances where staff should allow police to enter the building – when the officers present a warrant, when there are exigent circumstances, or when law enforcement is summoned to the building by staff.

53.    On May 27, 2020, The Bronx Defenders emailed the Executive Director of Concourse House, Manuela Schaudt, asking why the NYPD was allowed to enter Ms. Roundtree's apartment without a warrant. In her written response, Ms. Schaudt confirmed that "security staff escorted the police to Ms. Roundtree's unit," that they "knocked on her personal door to her room," and confirmed that they did not have a warrant, writing: "The police gave her a date (deadline) to turn herself in or else they would have to obtain a warrant." The Bronx Defenders followed up, asking, "[I]s it the procedure for this situation to allow NYPD into the common area and then knock on the individual door?" Ms. Schaudt responded, "Yes, that is correct."

54.    In sum, Defendant Vega and Concourse House violated written DHS policies by failing to require the NYPD Members to present a warrant; by escorting the officers to Ms. Roundtree's private apartment instead of turning them away or asking Ms. Roundtree if she consented to go with them; and by allowing the NYPD Members to enter into and remain inside Ms. Roundtree's private apartment without her consent for a half hour.

55.    This conduct not only violated written DHS policies, but the Executive Director of the Concourse House identified it as Concourse House regular procedure and practice.

**FIRST CAUSE OF ACTION**

**False Arrest/False Imprisonment - Under New York Law**

56.     Ms. Roundtree repeats, reiterates, and realleges each allegation contained in paragraphs marked 1 through 55 with the same force and effect as if more fully set forth at length herein.

57.     The Individual Defendants intended to confine Plaintiff.

58.     The Individual Defendants confined Plaintiff.

59.     Plaintiff was conscious of the confinement.

60.     Plaintiff did not consent to the confinement.

61.     The confinement was not otherwise privileged.

62.     As a direct and proximate result of Defendants' acts and omissions, Defendants deprived Plaintiff of her liberty as well as her constitutional and legal rights; caused Plaintiff pain, suffering, psychological, emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and otherwise damaged and injured Plaintiff.

## SECOND CAUSE OF ACTION

### Trespass - Under New York Law

63.  Ms. Roundtree repeats, reiterates, and realleges each allegation contained in paragraphs marked 1 through 62 with the same force and effect as if more fully set forth at length herein.

64. The Individual Defendants entered Ms. Roundtree's apartment without justification, authority, or permission.

65. As a direct and proximate result of Defendants' acts and omissions, Defendants deprived Plaintiff of her liberty as well as her constitutional and legal rights; caused Plaintiff pain, suffering, psychological, emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and otherwise damaged and injured Plaintiff.

## THIRD CAUSE OF ACTION

### Negligent Training and Supervision - Under New York Law

66. Ms. Roundtree repeats, reiterates, and realleges each allegation contained in paragraphs marked 1 through 65 with the same force and effect as if more fully set forth at length herein.

67. Defendants City of New York and its employees, servants and/or agents acting within the scope of their employment did negligently train the Individual Defendants regarding, *inter alia*, NYPD authority to enter a private residential apartment, including such an apartment within a DHS shelter, without consent, a written warrant, or exigent circumstances; DHS written policies regarding the same; and failed properly to supervise the Individual Defendants, including with respect to the incident at issue in this complaint.

68. As a direct and proximate result of Defendants' acts and omissions, Defendants deprived Plaintiff of her liberty as well as her constitutional and legal rights; caused Plaintiff pain, suffering, psychological, emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and otherwise damaged and injured Plaintiff.

## FOURTH CAUSE OF ACTION

### Failure to Intervene (Theory of Liability)

69. Ms. Roundtree repeats, reiterates, and realleges each allegation contained in paragraphs marked 1 through 68 with the same force and effect as if more fully set forth at length herein.

70. Each of the individual Defendants was present when the others violated Ms. Roundtree's rights as described elsewhere herein, and had a reasonable opportunity to prevent the violations of Ms. Roundtree's rights, but failed to intervene to do so.

71.     As a direct and proximate result of Defendants' acts and omissions, Defendants deprived Plaintiff of her liberty as well as her constitutional and legal rights; caused Plaintiff pain, suffering, psychological, emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and otherwise damaged and injured Plaintiff.

## FIFTH CAUSE OF ACTION

### *Respondeat Superior* -  Under New York Law – Against Defendant City of New York

72. Ms. Roundtree repeats, reiterates, and realleges each allegation contained in paragraphs marked 1 through 71 with the same force and effect as if more fully set forth at length herein.

73. The conduct of the Individual Defendants alleged herein occurred while they were on duty and/or in and during the course and scope of their duties and functions as police officials, and/or while they were acting as agents and employees of Defendant City, clothed with and/or invoking state power and/or authority, and, as a result, Defendant City is liable to the Plaintiff pursuant to the state common law doctrine of *respondeat superior*.

74. As a direct and proximate result of Defendants' acts and omissions, Defendants deprived Plaintiff of her liberty as well as her constitutional and legal rights; caused Plaintiff pain, suffering, psychological, emotional injury, and/or humiliation; caused Plaintiff to expend costs and expenses; and otherwise damaged and injured Plaintiff.

## SIXTH CAUSE OF ACTION

### Unlawful Seizure/False Arrest - Under 42 U.S.C. § 1983 for Violation of Plaintiff's Rights Secured Under the Fourth and Fourteenth Amendments to the United States Constitution

75.     Ms. Roundtree repeats, reiterates, and realleges each allegation contained in paragraphs marked 1 through 74 with the same force and effect as if more fully set forth at length herein.

76.    The Individual Defendants seized Plaintiff without any judicial warrant or other privilege or lawful justification,

77.    The Individual Defendants intended to confine Plaintiff.

78.    The Individual Defendants confined Plaintiff.

79.    Plaintiff was conscious of the confinement.

80.    Plaintiff did not consent to the confinement.

81.    The confinement was not otherwise privileged.

82.    As a direct and proximate result of Defendants' acts and omissions, Defendants deprived Ms. Roundtree of her liberty as well as her constitutional and legal rights; caused Ms. Roundtree pain and suffering; caused Ms. Roundtree to expend costs and expenses; and otherwise damaged and injured Ms. Roundtree.

**SEVENTH CAUSE OF ACTION**

**Municipal Liability Claims Against Defendant City of New York Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978)**

83.    Ms. Roundtree repeats, reiterates, and realleges each allegation contained in paragraphs marked 1 through 82 with the same force and effect as if more fully set forth at length herein.

84.    Defendant City of New York is liable for the Individual Defendants' misconduct described above based on *Monell* liability.

85.    For example, Defendant City failed to train and supervise the Individual Defendants with respect to, *inter alia, NYPD* authority to enter a private residential apartment, including such an apartment within a DHS shelter, without consent, a written warrant, or exigent circumstances; DHS written policies regarding the same; and failed properly to supervise the Individual Defendants, including with respect to the incident at issue in this complaint.

86.   Additionally, although DHS has written policies that prohibit DHS shelter workers such as Defendant CH Jane Doe from allowing NYPD members to enter private residential apartments such as such as Ms. Roundtree's within DHS shelters such as Concourse House unless the officers present a warrant, there are exigent circumstances, or when law enforcement is summoned to the building by staff, Concourse House procedures and practices were to permit the NYPD Members to enter the facility without a warrant, as a result of which Defendant CH Jane Doe allowed the NYPD Members access to Ms. Roundtree's private apartment, and permitted the NYPD Members to remain inside of Ms. Roundtree's apartment door, without her consent, for a half hour.

87.   As a direct and proximate result of Defendants' acts and omissions, Defendants deprived Ms. Roundtree of her liberty as well as her constitutional and legal rights; caused Ms. Roundtree pain, suffering, psychological, emotional injury, and humiliation; and caused Ms. Roundtree costs and expenses, and otherwise damaged and injured Ms. Roundtree.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff MY'ASHA ROUNDTREE demands the following relief:

a.   Compensatory damages against all the Individual Defendants and the City of New York;

b.   Punitive damages against all the Individual Defendants and the City of New York;

c.   The convening and empaneling of a jury to consider the merits of the claims herein;

d.   A declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 USC §§ 2201 and 2202, finding the City of New York, DHS, and Concourse House violated

Ms. Roundtree's rights under the United States and/or New York State constitution(s) and/or New York law by permitting the NYPD Members to enter Concourse House without Ms. Roundtree's consent, without presenting a warrant, and absent exigent circumstances;

e. An injunction against Defendants City and Concourse House preventing them from allowing law enforcement officers into private areas of DHS shelter facilities without the consent of the resident(s), a written warrant, or exigent circumstances;

f. Costs and interest and attorneys' fees; and

g. Such other and further relief as this court may deem appropriate and equitable.

Dated:        January 28, 2022

By: _____/S/_____

The Bronx Defenders
*Attorneys for My'asha Roundtree*
Michael Alexander Thomas
Robyn Mar
360 E. 161st Street
Bronx, NY 10451
718-838-7878
MichaelT@bronxdefenders.org

_____/S/_____

Gideon Orion Oliver
*Co-Counsel for My'asha Roundtree*
1825 Foster Ave., Suite 1K
Brooklyn, NY 11230
718-783-3682
gideon@gideonlaw.com

_____/S/_____

Cohen & Green PLLC
Elena L. Cohen
*Co-Counsel for My'asha Roundtree*
1639 Centre St. Suite 216
Ridgewood, NY 11385
929-888-9650

elenacohenesq@gmail.com

TakeRoot Justice
*Co-Counsel for My'Asha Roundtree*
Ryan MacDonald
123 Williams Street, 16th Floor
New York, NY 10038
(646) 459-3014
rmacdonald@takerootjustice.org